The **BALOISE INSURANCE CO., LTD.,**
**Global Lens Distribution Co.,**
**Inc., Plaintiffs,**

v.

**UNITED AIRLINES, INC., Skytruck**
**International Airfreight, Inc.,**
**Defendants.**

**No. 88 CIV 3679 (LBS).**

United States District Court,
S.D. New York.

Sept. 14, 1989.

196

Yorkston W. Grist, P.C., New York City (David L. Mazaroli, of counsel), for plaintiffs.

Felcher & Felcher, New York City (Scott A. Felcher, of counsel), for defendant United Airlines, Inc.

Donovan, Maloof, Walsh & Repetto, New York City (Paul H. Murphy, of counsel), for defendant Skytruck Intern. Airfreight, Inc.

SAND, District Judge.

Plaintiffs The Baloise Insurance Co., Ltd. ("Baloise") and Global Lens Distribution Co., Inc. ("Global") sued United Airlines Inc. ("United") and Skytruck International Airfreight, Inc. ("Skytruck") to recover for non-delivery and loss of a shipment of optical products and equipment. The case is before this Court now on defendant United's motion for summary judgment and defendant Skytruck's and plaintiffs' cross motions for summary judgment, pursuant to Fed.R.Civ.Pro. 56.

*Facts*

All parties agree to the following facts. On March 3, 1988, at Global's request, defendant Skytruck picked up eleven pieces of optical equipment weighing 200 pounds from an optical supplier in Flushing, New York, and Skytruck issued on March 4 its air waybill number 1067. Skytruck consolidated the shipment into a single "E" container, prepared United's air waybill number 016–3003–8713, and delivered the goods to United at JFK airport on March 4. The United air waybill indicates that the shipment was booked on United flight 633 from JFK on March 5 to O'Hare Airport in Chicago, Illinois, where it would connect with United flight 769 on March 6 for shipment to its final destination, Little Rock, Arkansas.

United never delivered the shipment to Little Rock. While United does not dispute that it did receive the cargo at its warehouse at JFK Airport on March 4, it is unable to provide any explanation for what happened to the cargo since that date. Plaintiffs seek to recover $46,250.00, the full value of the optical equipment.

Both air waybills contain limitation of liability clauses. Skytruck's air waybill 1067 states on its face "The shipper's attention is drawn to the notice concerning carrier's limitation of liability. Shipper may increase such limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required." The terms and conditions on the reverse of the air waybill recite:

> Except as otherwise provided in Carrier's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply Carrier's liability shall not exceed US $20.00 or the equivalent per kilogramme of goods lost, damaged or delayed, unless a higher value is declared by the shipper and a supplementary charge paid.

When it filled out its air waybill 1067, Skytruck noted "Max Free" in the space marked "Declared Value for Carriage," to indicate that Global did not claim any higher declared value for the shipped goods than what was provided by Skytruck's limited liability provisions. Using the industry conversion of $20.00 per kilogram to $9.07 per pound, Skytruck argues that its liability is limited to $1,814.00 for the 200 pound shipment.

United's air waybill contains similar limitation of liability provisions. On its face, United air waybill 016–3003–8713 recites:

It is agreed that the goods described herein are accepted in apparent good order and condition (except as noted) for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF. THE SHIPPER'S ATTENTION IS DRAWN TO THE NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY. Shipper may increase such limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

The reverse side of the air waybill provides:

7. *Limit of Liability*

A. In consideration of the applicable transportation rates, shipper, consignee and all parties having an interest in the shipment agree that the value of the shipment shall be determined as follows, and that the total liability of United and its agents, including liability for special or consequential damages, shall in no event exceed the *lesser* of:

1. (a) 50 cents per pound/per shipment (but not less than $50.00 per shipment) unless the shipper declares a higher value on this airbill at the time the shipment is tendered to United and an additional transportation charge as shown on this airbill has been paid for the amount of declared value exceeding 50 cents per pound.

(b) the amount of any transportation charge for which United might be liable or;

2. The amount of any damage actually sustained.

Again, Skytruck marked United's air waybill 016–3003–8713 "Max Free" in the blank provided for "Declared Value for Carriage." United therefore argues that its liability is limited to $100 for the 200 pound shipment.

## Discussion

The critical issue is whether this Court should apply federal common law or New York state law to determine the enforceability of the provisions in the air waybills that limit the carriers' liabilities. The legal principles that control the resolution of this issue are clearly established in several cases with similar factual backgrounds.

When a bailee commits the intentional tort of conversion, courts will not enforce limitation of liability provisions on grounds of public policy. However, federal courts and New York courts follow different rules for what constitutes proof of conversion. Absent some affirmative proof of conversion, courts applying federal common law will enforce a contractual limitation of liability provision. *Precious Gem Resources, Inc. v. Federal Express Corp.*, No. 86–Civ.–7576 (MBM), 1989 WL 31705 (S.D.N.Y. March 30, 1989) (LEXIS, Genfed library, Dist file) (citing cases); *Nippon Fire & Marine Ins. v. Holmes Transp.*, 616 F.Supp. 610, 611–12 (S.D.N.Y.1985) (citing cases). However, under New York law, a plaintiff establishes a prima facie case of conversion by proving delivery to a bailee and the bailee's failure to return the property upon demand. The defendant must then provide "evidence sufficient to prove that its failure to return the property is not the result of its conversion of that property to its own use." *I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 409 N.E.2d 849, 851, 431 N.Y.S.2d 372, 374 (1980).

It is clear that this case is governed by the federal rule. Federal common law governs a carrier's liability for the loss of goods during interstate shipment. *Precious Gem Resources, Inc. v. Federal Express Corp.*, No. 86–Civ.–7576 (MBM), 1989 WL 31705 (S.D.N.Y. Mar. 30, 1989) (LEXIS, Genfed library, Dist file); *Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92, 94 (S.D.N.Y.1987) (citing *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2d Cir.1978) and *First Pa. Bank v. Eastern Airlines*, 731 F.2d 1113, 1122 (3d Cir. 1984)); *Nippon*, 616 F.Supp. at 612. Therefore, since plaintiffs here have not provided any evidence to suggest that ei-

ther defendant converted the optical equipment to its own use, the liability limiting provisions of the defendants' airbills will apply to the claims asserted.

Plaintiffs argue that since United stored the goods prior to interstate shipment in a New York warehouse, this Court should apply New York law. However, United should not be treated as a warehouseman simply because it stores goods temporarily in a warehouse facility prior to transport. *See Royal Ins. v. Amerford Air Cargo,* 654 F.Supp. 679, 681 (S.D.N.Y. 1987). The New York rule of *I.C.C.* applies only to bailees in the business of storing goods, not to temporary bailments incident to interstate shipment. Plaintiffs allege that the shipment was re-routed by United from its originally scheduled flight on March 5 to a flight on March 6, increasing the time that the goods were subject to a risk of loss. However, one additional night's bailment does not convert United from an interstate shipper to a warehouseman where the goods are being held merely incident to their imminent transit.

Plaintiffs also argue that this Court should follow the decision in *Colgate Palmolive v. S/S Dart Canada,* 724 F.2d 313, 315 (2d Cir.1983) which held that state law applied to cargo lost while stored prior to sea transport. However, that case involved the Carriage of Goods by Sea Act, which applies only when goods are actually on board a sea vessel. In cases involving interstate air shipment, the courts have consistently treated losses that may have occurred from storage prior to and during interstate shipment as governed by the federal common law rule.

The plaintiffs make two additional arguments against enforcement of the contractual terms of shipment. First, relying on a decision of a California state court, *Information Control Corp. v. United Airlines Corp.,* 73 Cal.App.3d 630, 140 Cal. Rptr. 877 (1977), plaintiffs contend that the re-routing of the shipment materially increased the risk of loss. In *Information Control,* however, the re-routing was from a single direct flight to two flights separated by an overnight stopover at a third airport, and the California court found that the plaintiff specifically requested shipment on a direct flight. In this case, the airbill states that "United has no obligation to commence or complete transportation ... according to any specific schedule," and the original routing contemplated an overnight layover in Chicago. Therefore, this Court finds that United's alleged re-routing of the shipment did not materially change the terms of its contract.

Second, plaintiffs argue that defendant Skytruck cannot enforce the liability limiting provisions of its contract since on its own air waybill, Skytruck intentionally misrepresented the origin of the shipment as Montreal, rather than New York. However, there is uncontroverted evidence that Global instructed Skytruck to mark the airport of departure as Montreal, the home address of Global, to conceal from the buyer in Little Rock the identity of Global's supplier in New York. Whether the incorrect information was the result of compliance with the shipper's instructions or inadvertence, such immaterial inaccuracy will not prevent limitation of liability. *Republic Nat'l Bank v. Eastern Airlines,* 815 F.2d 232, 237–38 (2d Cir.1987).

Since there are no genuine issues as to any material facts, summary judgment is appropriate. This Court holds that the limitation of liability clauses contained in the air waybills of United and Skytruck are enforceable. Defendant United's motion for summary judgment and defendant Skytruck's cross motion for summary judgment are granted to the following extent. Judgment is to enter for the plaintiffs against defendant Skytruck for $1,814.00. Judgment is to enter for Skytruck in its crossclaim against United in the amount of $100.00. Plaintiff's cross motion for summary judgment is denied.

SO ORDERED.